IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VANITA JEAN BARNES,

    Plaintiff,

v.                                                                                                                                     1:18-cv-00116-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,[1]

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Vanita Jean Barnes's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 22), which was fully briefed on November 23, 2018. *See* Docs. 23, 24, 25. The parties consented to my entering final judgment in this case. Docs. 4, 10, 11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to either include or explain why he rejected Ms. Barnes's need for redirection in the RFC. I therefore GRANT Ms. Barnes's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Barnes was born in 1968, completed the ninth grade,[3] and worked for approximately nine years as a manufacturing machine operator, three years as a van driver, and for short time as a waitress. AR 68, 97, 287, 334.[4] Ms. Barnes filed an application for Disability Insurance Benefits ("DIB") on December 18, 2012 and an application for Supplemental Security Income ("SSI") on October 16, 2013, alleging disability since February 1, 2010 due to bipolar disorder,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Ms. Barnes initially stated that she had completed the 10th grade. AR 333. At the hearing, however, she stated that she had actually completed the ninth grade twice. AR 97.

[4] Document 15-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page rather than to the CM/ECF document number and page.

3

depression, arthritis, memory loss, chronic pain, anxiety, and post-traumatic stress disorder ("PTSD"). AR 287–302, 332. The Social Security Administration ("SSA") denied her claims initially on April 26, 2013. AR 163–69. The SSA denied her claims on reconsideration on October 3, 2013. AR 173–75. Ms. Barnes requested a hearing before an ALJ. AR 176–77. On December 4, 2014, ALJ Frederick Upshall, Jr. held a hearing. AR 40–72. ALJ Upshall issued his unfavorable decision on May 26, 2015. AR 138–57. Ms. Barnes requested review by the Appeals Council. AR 227–28. On September 6, 2016, the Appeals Council remanded the case to the ALJ to resolve conflicts between the RFC and the Dictionary of Occupational Titles ("DOT") requirements for the jobs the ALJ found Ms. Barnes capable of performing, and for the ALJ to explain how he found Ms. Barnes capable of lifting more than the weight opined by the consultative examiner. AR 158–61. On January 24, 2017, ALJ Upshall held a second hearing. AR 73–108. He issued a second unfavorable decision on August 15, 2017. AR 7–34.

The ALJ found that Ms. Barnes met the insured status requirements of the Social Security Act through June 30, 2012. AR 13. At step one, the ALJ found that Ms. Barnes had not engaged in substantial, gainful activity since her alleged onset date of February 1, 2010.[5] *Id.* At step two, the ALJ found that Ms. Barnes had the following severe impairments: degenerative joint disease of the spine, knees, hips, and hands, depression, anxiety, and PTSD. *Id.* At step three, the ALJ found that none of Ms. Barnes's impairments, alone or in combination, met or medically equaled a Listing. AR 13–15. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Barnes's RFC. AR 15–26. The ALJ found Ms. Barnes had the RFC to

> lift, carry, push, and pull fifteen pounds occasionally and ten pounds frequently, stand and/or walk for a total of six hours in and eight-hour workday and sit for a total of six hours in an eight-hour workday. The claimant can occasionally climb

---

[5] At the first ALJ hearing, Ms. Barnes amended her onset date to August 1, 2011. AR 45. At the second ALJ hearing, the onset date was reset to February 1, 2010. AR 77.

4

ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, crouch, kneel, and crawl. The claimant can frequently handle and finger (perform gross and fine manipulation) with the bilateral upper extremities. The claimant retains the ability to perform work that is limited to simple, routine, and repetitive tasks, consistent with a reasoning level of two, performed in a work environment free of fast paced production requirements, involving simple, work-related decisions, and with few, if any, workplace changes. The claimant can tolerate occasional interaction with the public. I find this RFC is consistent with a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

AR 14–15.

At step four, the ALJ concluded that Ms. Barnes could not perform her past relevant work as a waitress, a van driver, or as a machine operator. AR 26–27. The ALJ found Ms. Barnes not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as routing clerk, cutter/paster, and envelope addresser. AR 27–28. Ms. Barnes requested that the Appeals Council review the ALJ's unfavorable decision. AR 283–86. On December 12, 2017, the Appeals Council denied the request for review. AR 1–6. Ms. Barnes timely filed her appeal to this Court on February 5, 2018. Doc. 1.[6]

**IV.  Ms. Barnes's Claims**

Ms. Barnes raises eleven arguments for reversing and remanding this case: (1) the ALJ erred by omitting a limitation in Dr. McCarthy's opinion from her RFC without explanation; (2) the ALJ's RFC finding that she could perform sustained sitting, standing and walking is not supported by substantial evidence; (3) the ALJ erred in finding she could perform frequent reaching and handling; (4) the ALJ erred by omitting a limitation in Dr. Flynn's opinion from her RFC without explanation; (5) the ALJ erred in finding that her treatment for psychological problems was sporadic; (6) the ALJ erred in considering the amount of psychological treatment

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

she received in assessing her credibility; (7) the ALJ failed to adequately develop the record; (8) the ALJ erred in relying on the VE's testimony at step five; (9) the ALJ erred by failing to assess whether the number of jobs the VE testified she was capable of performing in the national economy was "significant"; (10) the ALJ erred in finding her capable of doing the job of "cutter and paster" because she cannot sit for prolonged periods; (11) the ALJ erred in finding her capable of doing the jobs of "cutter and paster" and "addresser" because these jobs do not actually exist. Doc. 22 at 6–27. I find that the ALJ erred by omitting a limitation in Dr. Flynn's opinion from her RFC without explanation. Because I remand based on this error, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. The ALJ erred by omitting a limitation in Dr. Flynn's opinion from Ms. Barnes's RFC without explanation.

Ms. Barnes argues that the ALJ erred by failing to include her need for redirection, assessed by consultative clinical psychologist Susan M. Flynn, into her RFC. Doc. 22 at 14–16. The Commissioner argues that the ALJ "accommodate[d] the need for redirection assessed by Dr. Flynn" by limiting Ms. Barnes to "few, if any workplace changes." Doc. 23 at 14. I agree with Ms. Barnes.

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[7] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must

---

[7] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, for all claims filed on or after March 27, 2017. Ms. Barnes filed her claims in 2012 and 2013; thus SSR 96-5p applies.

6

explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions.").

Dr. Flynn conducted a psychological evaluation of Ms. Barnes on April 22, 2013, at the request of New Mexico Disability Determination Services. AR 507–09. Dr. Flynn conducted a clinical interview, a Mini Mental Status Exam, and reviewed Ms. Barnes's SSA disability report. AR 507. During the mental status exam, Dr. Flynn noted that Ms. Barnes had lapses in her attention and that "it appeared to be difficult for her to stay on topic." AR 508. Dr. Flynn noted that Ms. Barnes's "thought processes were mostly organized but there were tangents." *Id*. She further noted that Ms. Barnes's "judgment appears to be impaired. Her level of insight seems intact. Her ability to reason is at the concrete level. She has a small fund of general knowledge." AR 509. In assessing Ms. Barnes's current level of functioning, Dr. Flynn opined that Ms.

Barnes was "able to pay attention and follow directions **although she needs re-direction**." *Id*. (emphasis added).

In assessing the RFC, the ALJ noted that Dr. Flynn found Ms. Barnes was able to "pay attention and follow directions with redirection." AR 21. However, the ALJ failed to explain why he rejected this limitation.[8] The ALJ failed to "explain why [Dr. Flynn's] opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. The ALJ stated only that Dr. Flynn's opinion was "not generally consistent with the evidence or other opinion evidence contained in the record. The claimant's evidence provided at the hearing level indicate that the claimant is **more limited** from a mental standpoint than was assessed by the consultative evaluator. Therefore, the undersigned affords only some weight to the opinion of Dr. Flynn." AR 23 (emphasis added). Because the ALJ found Ms. Barnes **more limited** than Dr. Flynn, he was required to include the opined need for redirection (or some greater limitation) in the RFC. This he did not do.

The ALJ did include some other discussion of Ms. Barnes's mental RFC, but never directly addressed the need for redirection. In a section of the RFC discussing "inconsistencies between the degree of severity the claimant alleges and the objective medical findings," the ALJ stated the following:

> As for any functional limitations [from her mental impairments], the claimant's immediate and remote memory was intact, however she was noted to have some lapses in concentration. She scored 30/30 and 28/30 on the mini mental status

---

[8] At step three, the ALJ cited Dr. Flynn's opinion that Ms. Barnes could "follow directions with redirection" and found that Ms. Barnes had moderate limitations in her abilities to understand, remember, and apply information and in her abilities to concentrate, persist, and maintain pace. AR 14–15. Any analysis of limitations at step three, however, cannot substitute for the more detailed assessment of mental RFC the ALJ is required to do in assessing a claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *4.

The Commissioner argues that the ALJ "gave good reasons for giving little weight to the GAF scores in the record . . . ." Doc. 23 at 13. While this may explain why the ALJ discounted Dr. Flynn's assessed GAF of 45, it does not explain why the ALJ rejected Dr. Flynn's assessment that Ms. Barnes required redirection.

> examinations that were administered at the consultative examinations. (Exs. 4F and 5F). Therefore, the undersigned has limited the claimant to performing simple, routine, and repetitive tasks as defined with greater specificity in the residual functional capacity above.

AR 26. This section of the RFC acknowledges that Ms. Barnes has lapses in concentration, but it does not acknowledge that Ms. Barnes needs redirection to get back on task and is, therefore, insufficient.

The Commissioner urges the Court to find that the ALJ adequately addressed Dr. Flynn's opinion that Ms. Barnes "needs redirection" in the RFC he promulgated. Doc. 23 at 13–14. As stated above, the ALJ found Ms. Barnes had the mental RFC

> to perform work that is limited to simple, routine, and repetitive tasks, consistent with a reasoning level of two, performed in a work environment free of fast paced production requirements, involving simple, work-related decisions, and with few, if any, workplace changes. [Ms. Barnes] can tolerate occasional interaction with the public.

AR 15. The Commissioner asserts that the RFC limitation to "few, if any workplace changes" accommodates Ms. Barnes's need for redirection. Doc. 23 at 14. The Court is not convinced. First, the Commissioner cites no law for this proposition and there is no evidence that Ms. Barnes's need for redirection is triggered by workplace changes. The Court agrees with those courts that have held that the RFC must specifically address a need for redirection. *See Lee v. Comm'r of Soc. Sec.*, No. 2:18-CV-109, 2018 WL 5960822, at *2, *4 (S.D. Ohio Nov. 14, 2018), report and recommendation adopted, No. 2:18-CV-109, 2019 WL 95914 (S.D. Ohio Jan. 3, 2019) (finding "redirection to task as needed" not addressed by RFC limiting claimant to "perform[ing] simple routine and repetitive tasks, involving only simple work-related decisions and with few, if any, workplace changes; cannot have strict production quotas or fast-paced work such as on an assembly line; and could have occasional interaction with the general public"); *see also Brown v. Comm'r of Soc. Sec.*, No. 1:14 CV 2479, 2016 WL 852528, at *3 (N.D. Ohio Mar.

9

4, 2016) (finding RFC "restrictions to simple, low stress and routine work with limited interaction with others d[id] not specifically address the exact limitation of a periodic loss of focus and the need for redirection").

Second, the ability to work without redirection is a critical job skill, and one which could be dispositive in this case. As Ms. Barnes points out, "all jobs require workers to persist until a task is completed." Doc. 22 at 15. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985). To persist (carry out these listed tasks on a sustained basis), a person must have "[t]he ability to sustain an ordinary routine without special supervision." POMS DI 25020.010 (available at https://secure.ssa.gov/poms.NSF/lnx/0425020010, last visited August 5, 2019).

The importance of the ability to work without redirection is evident from the hearing in this case. In his colloquy with the VE, the ALJ acknowledged that a person who requires redirection requires special supervision. *See* AR 106. The ALJ asked the VE to "assume that the hypothetical person needs to periodically be redirected **which would be requiring the person to have the tasks being performed either checked or reminded about those tasks several times a day.**" *Id.* (emphasis added). The VE testified that such a person could not do any of the jobs the ALJ found Ms. Barnes capable of performing at step five. *Id.* The VE further testified that "if somebody needs that kind of redirection, they are not going to maintain employment and depending on the frequency, could even need some kind of accommodation." AR 108.

Given that Ms. Barnes's need for redirection could result in a finding that she is disabled, the ALJ's failure to specifically discuss this limitation in assessing her RFC is error that requires remand.  *See Baysinger v. Astrue*, 11-cv-333 WYD, (D. Colo. Mar. 28, 2012), 2012 WL 1044746, at *5 (concluding that the ALJ's failure to discuss moderate limitations in assessing mental RFC "particularly egregious . . . because the VE testified that Plaintiff would be disabled if these moderate impairments were included in the RFC"); *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished) (finding that "[t]he omission of the ALJ's more specific findings is particularly significant given that, when the ALJ posed a hypothetical question incorporating all of the limitations found by [the doctor], the VE opined that [the claimant] would be precluded from all work activity"); *see also Vamvakerides v. Colvin*, No. 14cv897 SCY (D.N.M. Apr. 7, 2016), 2016 WL 10538097, at *7 (restriction in RFC to simple, routine tasks did not sufficiently account for moderate limitation in ability to complete a normal workday or workweek without interruptions, particularly when VE testified that inclusion of the specified limitation would prevent the claimant from performing any jobs).

## VI.    Conclusion

The ALJ erred in omitting a limitation in Dr. Flynn's opinion (the need for redirection) from Ms. Barnes's RFC without explanation.  The Court remands so that the Commissioner can adequately address this limitation.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for Rehearing (Doc. 22) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent